## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE APPLICATION        )
OF THE UNITED STATES OF AMERICA         )
'FOR A SEARCH WARRANT FOR THE           )
CONTENTS OF THE FOLLOWING               )
CELLULAR TELEPHONE:

(1) ZTE cellular telephone              )        Magistrate No.  16-430M
   IMEI:  868622025302409               )        **[UNDER SEAL]**

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, MICHAEL C. WARFIELD, being duly sworn depose and state:

### INTRODUCTION AND AGENT BACKGROUND

1.        I make this affidavit in support of an application for a search warrant authorizing the examination of property—one electronic device (the "Device") - which was seized by law enforcement from Tyray FRENZLEY on April 22, 2016.  This Device is currently in the possession of the McKees Rocks Police Department, McKees Rocks, PA.

2.        As set forth below, I have probable cause to believe that the recovered Device contains evidence of crimes in violation of 21 U.S.C. §§ 841(a)(1) (unlawful distribution of controlled substances) and 846 (conspiracy to distribute a controlled substance).

3.        I am currently deputized as a Task Force Officer of the Drug Enforcement Administration (DEA), United States Department of Justice (USDOJ).  As such, I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered

by law to conduct investigations of and make arrests for offenses enumerated in Title 18, United

States Code, Section 251.

4.          I am a Trooper with the Pennsylvania State Police and have been so employed

since September 27, 1993.  From February 2005, to October 2012, I was a full-time federally

deputized Task Force Officer (TFO) with the Drug Enforcement Administration (DEA),

Pittsburgh District Office (PDO), Task Force Group 1 (TFG1).  Currently, I am assigned to the

Pennsylvania State Police (PSP), Bureau of Criminal Investigations (BCI), Drug Law

Enforcement Division (DLED), Southwest Strike Force (SWSF).  In addition, I am currently

federally deputized, case specifically, by the DEA, which includes deputization in this ongoing

investigation.

5.          During my career in law enforcement, I have personally conducted and

participated in numerous federal drug trafficking investigations of individuals engaged in the

illegal distribution of controlled dangerous substances, have been involved in narcotics related

arrests and the execution of search warrants which resulted in the seizure of narcotics, and have

assisted in the supervision of activities of informants who provided information and assistance

resulting in drug buys.  Furthermore, I have participated in the investigation of numerous drug

trafficking conspiracies and cases involving the use of court-authorized disclosure of location

data relating to cellular telephones.

6.          During the course of my training and experience, I have become familiar with

the methods and techniques associated with the distribution of narcotics, the laundering of drug

proceeds, and the organization of drug conspiracies. In the course of conducting these

investigations, I have been involved in the use of the following investigative techniques:

interviewing informants and cooperating witnesses, conducting physical surveillance, conducting

and participating in short-term and long-term undercover operations including reverse undercover drug operations, consensual monitoring and recording of both telephonic and non-telephonic communications, analyzing pen register data, conducting court-authorized wire and oral interception electronic surveillance, and preparing and executing search warrants which have led to substantial seizures of narcotics, firearms, contraband, and evidence of criminal activity.

7.      Based on my training and experience, I know that narcotics traffickers routinely use cellular telephones to organize, conduct, and execute their business. Specifically, drug traffickers often require the use of a telephone facility to negotiate times, places, schemes, and manners for importing, possessing, concealing, and distributing controlled substances and for arranging the disposition of proceeds derived from the sale of controlled substances.

8.      However, drug traffickers also know that law enforcement will target their use of telephones. Accordingly, it is common practice for narcotics traffickers to routinely utilize telephones, cellular telephones, and in most cases, multiple cell phones to try and insulate and protect themselves from law enforcement. Additionally, it is my experience that narcotics traffickers will often contact customers on one phone and speak with co-conspirators on another. Moreover, it is not unusual for them to initiate such telephone services under the name of an associate or family member.

9.      I am aware that evidence of drug, firearm, and money laundering crimes can often be found in electronic media, including cellular telephones, laptop computers, cameras, and tablet devices. Such evidence can be found throughout those items, such as in text messages, contact lists indicating the names and numbers of associates, call/text logs indicating calls/texts made to and received from associates, online search history files, word processing documents,

and photograph and video gallery files.  It should be noted that, with the advance of technology, the distinction between computers and cellular telephones is quickly becoming less clear. Actions such as internet searching or emailing, in addition to calling and text messaging and photographing, can now be performed from many cell phones.  In addition, as noted above, those involved in drug and firearm trafficking crimes commonly communicate using multiple cellular telephones.  Contemporaneous possession of multiple cellular telephones is, therefore, evidence of such trafficking.  Moreover, the particular numbers of, and the particular numbers dialed by, particular cellular telephones can be evidence of drug trafficking, particularly in light of the fact that it is a practical necessity that drug traffickers communicate with each other, as well as with their customers and suppliers, by telephone.  Such numbers can confirm identities of particular associates and the occurrence of certain events.

10.      Due to narcotics traffickers' heavy reliance on cellular telephones to conduct their business, evidence of drug crimes can often be found on cellular telephones.  For example, when a lower-level narcotics dealer receives an order (either in person or by telephone) for heroin or cocaine, that dealer may place a call or send a text message to a higher-level narcotics dealer indicating that he needs more narcotics to provide to the customer.  Accordingly, evidence of such a narcotics conspiracy can be found in various locations in a cellular telephone, such as in text messages, contact lists indicating the names and numbers of associates, and call logs indicating calls made to and received from associates.  This evidence of a narcotics conspiracy is critical to law enforcement's ability to locate and arrest all individuals involved in a particular narcotics sale.

11.      Further, I am aware that drug traffickers sometimes use their cellular telephones to take and retain trophy photographs and videos of their drugs, firearms, and

narcotics sales proceeds. Such traffickers, like law-abiding citizens, sometimes take photographs and videos using their cellular telephones of themselves with their friends, relatives, and associates and keep the photographs on their cellular telephones. When they are taken or retained by drug traffickers, such photographs and videos can be evidence, and can lead to additional evidence, of such illegal trafficking activity by identifying the traffickers, contraband, and people who are actively assisting and/or supporting the trafficking activity as well as the locations where they live or where they store their drugs, proceeds, or paraphernalia.

12.     Last, as with most electronic/digital technology items, communications made from an electronic device, such as a cellular telephone, are often saved or stored on the device. Storing this information can be intentional, for example, by saving a text message or a contact or an e-mail. Digital information can also be retained unintentionally. Traces of the path of an electronic communication or of an internet search may be automatically stored in many places on a cellular telephone. A forensic examiner often can recover evidence that shows when and in what manner a user of an electronic device, such as a computer or a cell phone, used such a device. Electronic files or remnants of such files can be recovered months or even years after they have been downloaded, stored, deleted, or viewed.

13.     I am submitting this affidavit in support of an application for a warrant to search the Device which was seized by law enforcement during a traffic stop and subsequent arrest of Tyray FRENZLEY, on April 22, 2016. I have obtained the information contained in this affidavit from my own participation in this investigation as well as from my conversations and interactions with other law enforcement agents and officers.

14.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and it does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

15.     The Device to be searched is:

    a.  ZTE Cellular Telephone with IMEI # 868622025302409 (hereinafter the **Search Location**).

The **Search Location** is currently located at the McKees Rocks Police Department, McKees Rocks, PA.  As described below, there is probable cause to conclude that the Device contains evidence of the commission of the federal felony offenses as listed in Attachment A.

16.     The applied-for warrant would authorize the forensic and/or manual examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment A.

## PROBABLE CAUSE[1]

17.     During the course of an ongoing investigation into heroin trafficking in Allegheny County and the surrounding areas, Darnell PAYNE was identified as an individual who distributes multiple brick quantities of heroin in the Pittsburgh area.

18.     On April 13, 2016, and Miscellaneous No. 16-01(d), the Honorable Arthur J. Schwab signed an Order authorizing the interception of wire and electronic communications occurring over PAYNE's phone.  After interceptions began, on or about April 19, 2016, law enforcement began to intercept communications between PAYNE and the user of 412-419-7665, relative to heroin trafficking activities.  For example, on April 19, intercepted calls indicated that PAYNE delivered two bricks of heroin to the user of 412-419-7665 early in the day, and that the

---

[1]  Note:  Because this Affidavit is being submitted for the limited purpose of seeking authorization for a federal search warrant for the **Search Location**, I have not set forth each and every event, known fact, and other known investigative activities concerning PAYNE and/or FRENZLEY.  Instead, I have set forth only those events, facts, and known investigative activities that I believe is necessary to establish the requisite probable cause to receive a search warrant authorization the search of the **Search Location**.

user of 412-419-7665 then ordered up an additional amount of heroin later that evening. Note that the user of 412-419-7665 specifically provided his address to PAYNE as 860 Railroad Street, McKees Rocks, PA.

19.       On April 22, 2016, at approximately 1343 hours, investigators established surveillance on 860 Railroad Street, McKees Rocks, PA, in an attempt to identify the user of 412-419-7665. Note that the user had been previously observed by surveillance, but had yet to be positively identified by name. At approximately 4:40 PM, upon observing the user of 412-419-7665, McKees Rocks Police Officer, Darrin Young, conducted a traffic stop on a vehicle in which this unidentified male was the front seat passenger. This unidentified male was positively identified as Tyray FRENZLEY. In addition, during the traffic stop, a criminal history check was conducted, and revealed an outstanding Allegheny County Probation violation Bench Warrant for FRENZLEY. Subsequently, FRENZLEY was taken into custody and transported to the McKees Rocks Police Department. Upon arrest, FRENZLEY was found to be in possession of the **Search Location** and $1,885.00 in U.S. currency.

20.       Based upon the foregoing, I have probable cause to believe that the Search Location contains evidence of violations of 21 U.S.C. §§ 841 and 846.

21.       In my training and experience, I know that the Search Location has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the **Search Location** first came into the possession of the McKees Rocks Police Department.

## CONCLUSION

22.        I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the Search Location to seek the items described in Attachment A.

Respectfully submitted,

/TFO/ Michael C. Warfield

Michael C. Warfield
Task Force Officer - DEA
Pittsburgh District Office


Subscribed and sworn to before me

on April 25, 2016:

HONORABLE MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

1.      All records, information, and items evidencing who used the device and/or when

and/or from where, or a violation Title 21, United States Code, Sections 841(a)(i)  and 846,

including:

        a.      incoming and outgoing call and text message logs
        b.      contact lists
        c.      photo and video galleries
        d.      sent and received text messages
        e.      online searches and sites viewed via the internet
        f.      online or electronic communications sent and received, including email, chat,
                and instant messages
        g.      sent and received audio files
        h.      navigation, mapping, and GPS files
        i.      telephone settings, including speed dial numbers and the telephone number for
                the subject telephone and related identifying information such as the ESN for
                the telephone
        j.      call forwarding information
        k.      messages drafted but not sent
        l.      voice messages


2.      As used above, the terms "records" and "information" include all of the foregoing

items of evidence in whatever form and by whatever means they may have been created or

stored, including any form of computer or electronic storage (such as flash memory or other

media that can store data) and any photographic form.  However, no real-time communications

will be intercepted and searched during service.